UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE RUIZ,<br><br>    Plaintiff,<br><br>  v.<br><br><br>GREG AHERN, et al.,<br><br>    Defendants. | Case No.  20-cv-01089-DMR<br><br>**ORDER ON DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 21 |

Defendants Alameda County ("the County"), Deputy Sheriff M. Solopow, and Sheriff Gregory Ahern move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff Jose Ruiz's amended complaint.[1]  [Docket No. 21 ("Motion"), 25 ("Reply").]  Ruiz filed a timely opposition.  [Docket No. 24 ("Opp.").]  The court held a hearing on June 25, 2020.

For the following reasons, the motion to dismiss is granted in part and denied in part.

I.    **BACKGROUND**

  A.    **Allegations**

Ruiz makes the following allegations in the amended complaint, all of which are taken as true for purposes of this motion.[2]  On October 3, 2017, Ruiz was incarcerated at the Santa Rita Jail, which is owned and operated by Alameda County.  [Docket No. 18 ("FAC") ¶ 9.]  While Ruiz was in his cell area, Solopow ordered him to stop making noise.  *Id.* ¶ 10.  Solopow then

---

[1] Ruiz filed an amended complaint after Defendants moved to dismiss his original complaint.  *See* Docket No. 14.

[2] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

United States District Court<br>Northern District of California

1    pulled Ruiz from the cell, handcuffed him behind his back, and escorted him down a flight of

2    stairs. *Id.* ¶ 11. At the bottom of the stairs, Solopow attempted to bend Ruiz's head forward and

3    Ruiz "informed the Defendant not to bend his head forward while being escorted handcuffed."[3]

4    *Id.* ¶¶ 12-13. Ruiz alleges that Solopow "grew impatient" and grabbed Ruiz by the shoulder and

5    took him to the ground "with extreme force." *Id.* ¶ 14. With Ruiz handcuffed and pinned on the

6    ground, Solopow placed his forearm "with force" on Ruiz's neck and "applied more force" to

7    Ruiz's body. *Id.* As a result of the force applied by Solopow, Ruiz experienced "pain in his

8    shoulder and face" and a blood clot that required surgery to treat. *Id.* Ruiz alleges that he

9    "submitted numerous inmate grievances regarding his abuse by Defendant Solopow." *Id.*

10       Additionally, Ruiz alleges that Ahern "knew or reasonably should have known" that Ruiz

11   would be subjected to the excessive force used by Solopow because Ahern "failed to train,

12   supervise and or control" Solopow. Id. ¶¶ 23-26. While Ruiz was incarcerated, Ahern was the

13   "exclusive authority of the Alameda County jail and the Plaintiff's health and safety." *Id.* ¶ 25.

14   Ruiz alleges that Ahern's "deficient" training policy and subordinate supervision amounted to "a

15   repudiation of the Plaintiff's constitutional rights." *Id.* ¶ 24. Therefore, Ahern's inaction was the

16   "moving force" behind the constitutional violation perpetuated by Solopow against Ruiz. *Id.* ¶¶

17   27-28.

18

19
_____

20   [3] Defendants note that the FAC omits facts that were present in original complaint. Motion at 4,
     13-14; Reply at 12, 14. In the original complaint, Ruiz alleges that Solopow held Ruiz's "arms up
21   past their range of motion, causing the Plaintiff to have to walk on the toes of his feet for balance,"
     and "while being walked in such an uncomfortable position, the Plaintiff seen [*sic*] a concrete
22   bench and tried to step on the bench to get some of his balance." [Docket No. 1 ¶¶ 13-14.]
     Defendants cite to *Azadpour v. Sun Microsystems, Inc.,* Case No. 06-cv-3272-MJJ, 2007 WL
23   2141079, at *2 (N.D. Cal. July 23, 2007) to note that the Court may adopt facts from the original
     complaint if they contradict the amended complaint so as to be "false and sham." Motion at 14.
24   *Azadpour* is distinguishable from the present case. In *Azadpour,* the pro se plaintiff's operative
     complaint explicitly denied allegations made in the original complaint. *Id.* ("I, the above named
25   Plaintiff, allege nothing against [the defendants]."). Here, the FAC omits allegations that Ruiz
     made in the original complaint, but Ruiz does not expressly contradict any of the facts he
26   previously alleged against Defendants. Additionally, the amended complaint does not incorporate
     by reference any portions from the original complaint. *See Williams v. County of Alameda*, 26 F.
27   Supp. 3d 925, 936 (N.D. Cal. 2014) ("It is well-established that an amended pleading supersedes
     the original pleading and renders it of no legal effect, unless the amended complaint incorporates
28   by reference portions of the prior pleading."). Therefore, this order only includes the allegations
     in the amended complaint, which is the operative complaint.

United States District Court
Northern District of California

United States District Court
Northern District of California

**B.      Procedural Background**

On February 12, 2020, Ruiz filed the original complaint for damages under 42 U.S.C §
1983 ("section 1983") for excessive use of force in violation of his Fourteenth Amendment rights
against the County, Ahern, and Solopow.  On April 9, 2020, Defendants filed a motion to dismiss
the original complaint, and Ruiz filed an amended complaint.  The amended complaint alleges a
single section 1983 claim for damages against all Defendants for excessive force.[4]

## II.      LEGAL STANDARD FOR RULE 12(B)(6) MOTIONS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in
the complaint.  *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).
When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all
of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94 (citation omitted),
and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of
"sufficient factual matter to state a facially plausible claim to relief."  *Shroyer v. New Cingular
Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. at
677-78; *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted).  A claim
has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at
678 (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and
conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl.
Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986));
*see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by
*Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

As a general rule, a court may not consider "any material beyond the pleadings" when
ruling on a Rule 12(b)(6) motion.  *Lee*, 250 F.3d at 688 (citation and quotation marks omitted).
However, "a court may take judicial notice of 'matters of public record,'" *id*. at 689 (citing *Mack
v. S. Bay Beer Distrib*., 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents

---

[4] The FAC is unclear as to whether Ruiz is also alleging a claim against the county under *Monell v.
Department of Social Services*, 436 U.S. 658, 690 (1978).  At the hearing, Ruiz confirmed that he is
not bringing a *Monell* claim.

1   whose contents are alleged in a complaint and whose authenticity no party questions, but which

2   are not physically attached to the pleading," without converting a motion to dismiss under Rule

3   12(b)(6) into a motion for summary judgment.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.

4   1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125-26.  The court need not accept

5   as true allegations that contradict facts which may be judicially noticed.  *See Mullis v. U.S. Bankr.*

6   *Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

## III.    ANALYSIS

8          Defendants move to dismiss the amended complaint on the basis that (1) Ruiz's claims are

9   barred by the statute of limitations; (2) Solopow is entitled to qualified immunity; (3) Ruiz fails to

10  state a claim as to Ahern; (4) Ruiz fails to state a claim against the County; and (5) Ruiz fails to

11  support his claim for punitive damages.

### A.     Statute of Limitations

13         A party may raise a statute of limitations defense on a motion to dismiss "[i]f the running

14  of the statute is apparent on the face of the complaint."  *Jablon v. Dean Witter & Co.*, 614 F.2d

15  677, 682 (9th Cir. 1980); *see also Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1004 (N.D. Cal.

16  2015) ("A plaintiff fails to state a claim, and therefore dismissal is appropriate, where his failure to

17  comply with the applicable statute of limitations is evident from the allegations of the

18  complaint.").  Such a motion "can be granted only if the assertions of the complaint, read with the

19  required liberality, would not permit the plaintiff to prove that the statute was tolled."  *Jablon*, 614

20  F.2d at 682.

21         Section 1983 does not contain its own limitations period.  *Cholla Ready Mix, Inc. v.*

22  *Civish*, 382 F.3d 969, 974 (9th Cir. 2004).  In actions brought under section 1983, courts "apply

23  the forum state's statute of limitations for personal injury actions, along with the forum state's law

24  regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent

25  with federal law."  *Canatella v. Van De Kamp*, 486 F.3d 1128, 1132 (9th Cir. 2007) (quoting

26  *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004)); *see also Wilson v. Garcia*, 471 U.S. 261, 277-

27  78 (1985) (holding that 1983 claims are best analogized to personal injury actions).  In California,

28  the statute of limitations for personal injury actions is the two-year period set forth in California

United States District Court
Northern District of California

1  Code of Civil Procedure ("CCP") section 335.1 ("section 335.1").  *Maldonado v. Harris*, 370 F.3d

2  945, 954 (9th Cir. 2004).

3  Tolling for the disability of imprisonment is controlled by CCP section 352.1 ("section

4  352.1"), which is the applicable statute in section 1983 actions.  *Jackson v. Fong*, 870 F.3d 928,

5  936 (9th Cir. 2017).  Section 352.1(a) provides that the statute of limitations is tolled when a

6  plaintiff is, "at the time the cause of action accrued, imprisoned on a criminal charge, or in

7  execution under the sentence of a criminal court for a term less than for life."  The maximum

8  period for tolling under section 352.1 is two years.  CCP § 352.1(a).  Although state law

9  determines the length of the limitations period and tolling, federal law determines when a civil

10  rights claim under section 1983 accrues.  *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).

11  Excessive force claims brought under section 1983 accrue when the plaintiff knows, or should

12  know, of the injury that is the basis for her claims.  *Maldonado*, 370 F.3d at 955.  In sum, a claim

13  that is subject to the statute of limitations under section 335.1 and the maximum two years of

14  statutory tolling under section 352.1 is timely if it is filed within four years from the date of the

15  accrual.  *Trujillo v. Jacquez*, Case No. 10-cv-05183-YGR, 2015 WL 428010, at *11 (N.D. Cal.

16  Jan. 30, 2015).

17  The incident at issue in this case took place on October 3, 2017.  FAC ¶ 9.  Ruiz filed this

18  action on February 11, 2020.  If tolling does not apply in this case, then the two-year statute of

19  limitations expired in October 2019 and Ruiz's claim is time-barred.  If tolling does apply, then

20  the case is timely because the statute of limitations did not begin running until Ruiz was released

21  in May 2018, which was less than two years before he filed his complaint.[5]

22  Defendants argue that Ruiz's claim is not tolled by section 352.1 because that statute does

23  not apply to individuals who are detained in county jails.[6]  Motion at 14, Reply at 2.  They cite a

24  _____

[5] The FAC does not provide Ruiz's release date.  At the hearing, his counsel reported that Ruiz
25  was released from jail in May 2018.  Ruiz must file a second amended complaint that includes the
date of his release.

26  [6] In their brief, Defendants also appeared to argue that the court should apply the tolling exception
27  in section 352.1(b), which "provides that there is no tolling of claims presentation requirements
for state-law tort claims against public entities or employees."  *Ellis v. City of San Diego, Cal.*,
28  176 F.3d 1183, 1189 (9th Cir. 1999), *as amended on denial of reh'g* (June 23, 1999); *see* CCP §
352.1(b).  At the hearing, Defendants conceded that section 352.1(b) does not apply to section

United States District Court
Northern District of California

recent California appellate decision, *Austin v. Medicis*, which held that tolling under section 352.1 only applies to claims brought by state prisoners and not to individuals who are in county jail rather than state prison, including pretrial detainees.  21 Cal. App. 5th 577, 597 (2018), *reh'g denied* (Apr. 11, 2018), *review denied* (June 13, 2018).  In response, Ruiz argues that the court must follow the Ninth Circuit's decision in *Elliott v. City of Union City*, which held that tolling under section 352.1 is merely "triggered by the individual's arrest and incarceration" and is therefore available for pretrial defendants who are held in continuous custody.  *See* 25 F.3d 800, 802 (9th Cir. 1994).  District courts are split on whether to apply the Ninth Circuit precedent in *Elliott* or follow *Austin*.

The Ninth Circuit held in *Elliott* that tolling is available to plaintiffs held in both county jails and state prisons because there is no practical distinction between the two forms of confinement.  25 F.3d at 803.  In *Elliott*, the plaintiff was arrested, charged, and held in continuous pretrial custody in the county jail until he was convicted and sent to prison.  *Id.* at 801.  While in prison, the plaintiff filed a section 1983 action in federal district court alleging that the defendant police officers used excessive force during his arrest.  *Id.*  The Ninth Circuit considered section 352.1's predecessor statute, section 352,[7] and held that "actual, uninterrupted incarceration is the touchstone for assessing tolling" because "[a] person held in police custody prior to arraignment is faced with the same limitations as someone in custody after arraignment." *Id.* at 803.  Therefore, the plaintiff's arrest and continuous confinement in the county jail tolled the statute of limitations. *Id.*

In *Austin*, the California Court of Appeal held that someone is "imprisoned on a criminal charge" under section 352.1 when they are "serving a term of imprisonment in the state prison."

---

1983 claims, which are not brought under state law and do not require a claim presentation under the California Tort Claims Act.  *See Silva v. Crain*, 169 F.3d 608, 610 (9th Cir. 1999) ("In general, state notice of claim statutes have no applicability to § 1983 actions.").

[7] The only difference between the two statutes is that section 352.1 sets a two-year maximum to the tolling period.  Section 352 did not set a maximum tolling period. The revision did not change to whom the statute applies.  *See Baros*, Case No. 17-cv-948-SHK, 2019 WL 3849171, at *6 (citing *Bullette v. County of Riverside*, Case No. 11-cv-817-JAK (RNB), 2011 WL 4387762, at *6 (C.D. Cal. July 20, 2011), *report and recommendation adopted*, Case No. 11-cv-817-JAK (RNB), 2011 WL 4402365 (C.D. Cal. Sept. 20, 2011)).

21 Cal. App. 5th at 597.  In *Austin*, a plaintiff brought contract and tort claims against the defendant attorney who represented the plaintiff in a criminal case but abandoned him before trial. *Id.* at 582-83.  The plaintiff's cause of action accrued while he was in county jail, where he was held for about a year and a half.  *Id.* at 537.  As a matter of first impression in the state courts, *Austin* analyzed the legislative history of section 352.1 and found that it "mention[s] only those inmates" incarcerated in state prison.  *Id.* at 596.  Therefore, the court determined that section 352.1 did not apply to claims that accrued during the plaintiff's pretrial detention.  *Id.*  The court acknowledged the Ninth Circuit decision in *Elliott* but found it "unpersuasive" because it "predated the enactment of section 352.1, [so] the *Elliott* court did not have the benefit of the legislative findings on this subject."  *Id.* at 590 n. 4.

After *Austin*, some district courts have continued to follow *Elliott* in applying section 352.1 to claims by individuals detained in county jail.  *See, e.g.*, *Baros*, 2019 WL 3849171, at *2; ("*Elliott* remains good law in the Ninth Circuit . . . unless and until the Ninth Circuit holds otherwise.") (citing to *Hart v. Massanari*, 266 F.3d 1155, 1170-71 (9th Cir. 2001)); *Johnson v. Cty. of Santa Clara*, Case No. 18-cv-06264-EJD, 2020 WL 870933, at *6 (N.D. Cal. Feb. 21, 2020) ("*Elliot[t]* remains binding on this Court."); *Wilkins v. Vancott*, Case No. 17-cv-00340-YGR, 2018 WL 3763316, at *3 (N.D. Cal. Aug. 7, 2018) ("Tolling under section 352.1 is triggered by the plaintiff's arrest and incarceration." (citing *Elliott*, 25 F.3d at 802-03)); *Kakowski v. Cty. of Sacramento*, Case No. 19-cv-0656-JAM (KJN), 2020 WL 1046564, at *4 (E.D. Cal. Mar. 4, 2020) ("Because the Ninth Circuit has not addressed the scope of § 352.1(a)'s applicability after the *Austin* decision was issued in 2018, *Elliott* remains precedent in the Ninth Circuit."), *report and recommendation adopted*, 2020 WL 2306852 (E.D. Cal. May 8, 2020).

Defendants argue that the court should instead apply *Austin*, which has also been followed by numerous federal courts.  *See, e.g.*, *Sekerke v. Hoodenpyle*. Case No. 19-cv-35-WQH, 2020 WL 914885, at *5 (S.D. Cal. Feb. 26, 2020) (declining to follow *Elliott* because federal courts "must follow the decision of the intermediate appellate court of the state.") (citing to *Briceno v. Scribner*, 555 F.3d 1069, 1080 (9th Cir. 2009)); *Arreola v. Cty. of Fresno Pub. Def.'s Office*, Case No. 12-cv-272-AWI (SAB), 2020 WL 1169222, at *6 (E.D. Cal. Mar. 11, 2020) (following *Austin* and

United States District Court
Northern District of California

1   holding that "section 352.1 does not apply to an individual who is in pretrial custody in a county

2   jail at the time his claims accrued because he is not 'imprisoned on a criminal charge' within the

3   meaning of section 352.1"); *Garcia v. Corral*, Case No. 18-cv-04730-PJH, 2019 WL 931754, at

4   *3 (N.D. Cal. Feb. 26, 2019) ("This court finds that *Elliott* is distinguishable from this case, and

5   the court agrees with the state court reasoning that regardless, *Elliott* does not apply."); *Lockett v.*

6   *Cty. of Los Angeles*, Case No. 18-cv-5838-PJW, 2018 WL 6842539, at *2 (C.D. Cal. Oct. 25,

7   2018) ("This Court is bound by the state appellate court's interpretation of state law.").

8       This court finds that *Austin* does not provide the governing law.  Ninth Circuit caselaw is

9   binding authority that "must be followed unless and until overruled by a body competent to do

10  so." *Hart*, 266 F.3d at 1170.  *Elliott* unambiguously provides that the tolling period of section

11  352.1 applies to claims brought by pretrial detainees in county jail.  *See Elliott*, 25 F.3d at 802 n. 4

12  ("[P]re-trial detainees clearly are 'imprisoned' within the meaning of the California statute . . . .").

13  Although *Elliott* analyzed section 352.1's predecessor statute (section 352), the only difference

14  between the prior and current versions is the length of the tolling period, which does not

15  undermine *Elliott*'s reasoning.  *See Johnson*, 2020 WL 870933, at *6 ("[T]he only difference

16  between the two statutes is that section 352.1 set a two-year maximum to the tolling period; the

17  revision did not change to whom the statute applies."); *see also Baros*, 2019 WL 3849171, at *6

18  ("[The] addition of the phrase 'not to exceed two years' appears to have been the only

19  modification to the preceding . . . statute.").

20      The court acknowledges that the Ninth Circuit recently issued a decision that follows

21  *Austin.  See Shaw v. Sacramento Cty. Sheriff's Dep't*, ___ Fed App'x ___, 2020 WL 3428856, at

22  *1 (9th Cir. June 23, 2020).  However, that opinion is unpublished and is not binding authority.

23  *See* Fed. R. App. P. Rule 32.1 (U.S. Ct. of App. 9th Cir. Rule 36-3(a) ("Unpublished dispositions

24  and orders of this Court are not precedent, except when relevant under the doctrine of law of the

25  case or rules of claim preclusion or issue preclusion.").  The Ninth Circuit has made clear that

26  "[o]nce a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless

27  overruled by the court itself sitting en banc, or by the Supreme Court." *Hart*, 266 F.3d at 1171.  It

28  is worth noting that *Shaw* contains a one-paragraph discussion of section 352.1 and does not

United States District Court
Northern District of California

1    mention *Elliott*.  *Elliott* is precedential authority that is directly on point in this case and has not

2    been overturned by the Ninth Circuit sitting en banc.  *See id.*  ("[C]aselaw on point is the law.").

3    Therefore, this court must follow *Elliott* unless and until the Ninth Circuit revisits that case in a

4    binding opinion.

5            The outcome is the same even if the court considers whether the California Supreme Court

6    would adopt the reasoning in *Austin*.  *See Briceno*, 555 F.3d at 1080.  In reviewing the legislative

7    history of section 352.1, *Austin* explained that historically, state prisoners were not able to bring

8    civil actions while they were incarcerated because they were considered "civilly dead."  21 Cal.

9    App. 5th at 592-93.  Section 352, which provided indefinite tolling during imprisonment, was

10   enacted in 1872 to ameliorate the loss of civil rights caused by civil death.  *Id.* at 594-95

11   ("[A]lthough prisoners were stripped of all civil rights during their incarceration—a legal

12   disability that prevented them from bringing civil actions or appearing in court—they would get

13   those rights back when they were released.").  In 1975, the California legislature passed the

14   Inmates' Bill of Rights, which (among other things), "granted state prisoners the right to bring

15   civil actions."  *Id.* at 595.  *Austin* noted that section 352's indefinite tolling period was later

16   reduced to two years in recognition of the fact that state prisoners now had the ability to bring their

17   claims while incarcerated and should do so in a timely manner.  *See id.* at 596.

18           *Austin* correctly points out that the legislative history of section 352.1 focuses on state

19   prisoners.  *See Austin*, 21 Cal. App. 5th at 596-97.  However, it does not follow that the legislature

20   therefore intended section 352.1 to apply only to claims brought by individuals held in state

21   prisons, as opposed to other forms of incarceration such as county jail.  Section 352 was amended

22   solely to add a two-year cap to the tolling mechanism in order to address the large increase of civil

23   lawsuits being filed by prison inmates.  *See* Stats. 1994, ch. 1083 § 1 ("Since 1988, the number of

24   civil lawsuits filed against the state by inmates incarcerated with the Department of Corrections

25   has outpaced the increase in California's prison population.").  The statutory amendment

26   embodied in section 352.1 did not make any changes to the definition of individuals who were

27   entitled to tolling.  It is therefore not surprising that the legislative history of section 352.1 focused

28   on the concern addressed by the specific statutory amendment; namely, capping of the tolling

period.  Thus, the legislative history notes that some of the lawsuits that had been tolled pursuant

to section 352 "concern[ed] events 10 to 15 years in the past," which bill proponents argued were

"very difficult to defend since witnesses and evidence may have disappeared and memories may

fade."  Sen. Floor Analysis, Sen. Bill No. 1445 (1993-1994 Reg. Sess.) Aug. 9, 1994.  The lack of

legislative comment about individuals held in county jail might well reflect the absence of prolific

or old claims brought by that demographic.  Therefore, contra *Austin*, the legislative history's

silence on individuals held in county jails is not indicative of the intent to exclude them from the

scope of 352.1.

In any event, by capping rather than eliminating tolling, the legislature recognized that

imprisonment poses barriers to a plaintiff's ability to file a timely action.  *See* Assembly

Committee on Judiciary, Sen. Bill No. 1445 (1993-1994 Reg. Sess.) June 15, 1994 (noting that a

proposed compromise of the tolling period would preserve "some notion of tolling . . . while,

simultaneously, the possibility of 'ancient' lawsuits being filed is eliminated").  As *Elliott* noted

(and *Austin* significantly failed to address), "[a] person held in police custody prior to arraignment

is faced with the same limitations as someone in custody after arraignment" and "the purpose of

disability statutes would be ill-served by creating an arbitrary distinction between pre- and post-

arraignment incarceration."  25 F.3d at 803.

Other factors also call *Austin*'s reasoning into doubt.  First, the plain language of section

352.1 states that the tolling applies to anyone "imprisoned on a criminal *charge*, or in execution

under the sentence of a criminal court for a term less than life."  CCP § 352.1(a) (emphasis added).

*Elliott* explained why "charge" clearly refers to pretrial detention:

> Although the words "imprisoned" might appear to refer to an actual
> prison, this reading of the statute would make it self-contradictory, since it
> refers to being held "on a criminal charge," i.e., prior to conviction. It is
> the second phrase, "in execution under sentence of a criminal court," that
> covers post-conviction incarceration, i.e., confinement in an actual prison.

25 F.3d at 802 n. 2; *see also Mitchell v. Greenough*, 100 F.2d 184, 197 (9th Cir. 1938) ("[T]he

phrase 'imprisonment on a criminal charge' refers to one who is imprisoned but not yet

convicted.").  *Austin* did not examine the term "charge."  Instead, it apparently interpreted

United States District Court
Northern District of California

1    "imprisoned on a criminal charge" to have the same meaning as the second clause in section 352.1,

2    which applies to individuals who are "imprisoned . . . in execution under the sentence of a criminal

3    court." Such an interpretation is unpersuasive because it is a "cardinal rule of statutory

4    interpretation that no provision should be construed to be entirely redundant." *Kungys v. United*

5    *States*, 485 U.S. 759, 778 (1988). At oral argument in this case, Defendants were not able to offer

6    an explanation for why section 352.1 contains both phrases in the disjunctive. Therefore, the

7    statute's plain language encompasses claims brought by pretrial detainees.

8          Moreover, as noted above, the Ninth Circuit requires courts to follow the decision of the

9    intermediate appellate court of the state, at least where the Ninth Circuit itself has not yet spoken on

10   an issue. *Briceno*, 555 F.3d at 1080. However, *Austin* is not the only California appellate court that

11   has addressed the question at issue here. Another California appellate court interpreted section 352

12   to apply to a prisoner in a federal halfway house, which contradicts *Austin*'s conclusion that section

13   352.1 applies only to state prisoners.[8] *See Bledstein v. Superior Court*, 162 Cal. App. 3d 152, 169

14   (1984). *Bledstein* determined that "allowing tolling while prisoners are in halfway houses is apt to

15   have only a minimal impact on the values statutes of limitations are expected to serve" because

16   "concerns about faded memories, stale evidence, discomfited defendants . . . subside when we

17   consider the relatively short duration of the average stay in halfway houses." *Id.* *Austin* does not

18   cite *Bledstein* or reconcile it with its conclusion that the successor section 352.1 applies solely to

19   state prisoners. Therefore, the state appellate court authority on this question is not settled.

20         In sum, the plain language of section 352 which is echoed in section 352.1, the legislative

21   history, the reasoning set forth by the Ninth Circuit in *Elliott*, and pre-*Austin* California law all

22   provide convincing evidence that the California Supreme Court would not adopt the reasoning in

23   *Austin*. *Elliott* remains good law and is not distinguishable from the facts here. Because *Elliot*

24   controls, the court will apply the two-year tolling of section 352.1 in addition to the two-year statute

---

[8] At the hearing, Defendants distinguished *Bledstein* on the basis that the individual in that case was not a pretrial detainee but rather was in detention following a conviction. Defendants' argument is unconvincing. *Austin* explicitly extended its reasoning to deny tolling to post-conviction jail inmates. *See* 21 Cal. App. 5th at 593 (explaining that jail—as opposed to prison—inmates never lost their civil rights and therefore did not need the tolling relief provided by section 352); *see also Sekerke*, 2020 WL 914885, at *3-5 (interpreting *Austin* to deny tolling to a post-conviction inmate who was in jail while waiting to be transferred to prison).

1    of limitations under section 335.1, for a total of four years.  Ruiz's claim accrued on October 3,

2    2017.  He was in continuous custody until May 2018, so the statute of limitations did not begin to

3    run until that date.  He filed this action on February 11, 2020, within the two-year statute of

4    limitations period.  While Defendants' motion to dismiss is granted as to the timeliness of Ruiz's

5    complaint because Ruiz did not allege sufficient facts to support tolling, it is clear that he will be

6    able to amend the complaint to add such facts.

7               **B.  Qualified Immunity**

8               Defendants move for summary judgment on Ruiz's section 1983 excessive force claim as

9    to Solopow on the basis that he is entitled to qualified immunity.  The doctrine of qualified

10   immunity protects government officials "from liability for civil damages insofar as their conduct

11   does not violate clearly established statutory or constitutional rights of which a reasonable person

12   would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is

13   "immunity from suit rather than a mere defense to liability."  *Mitchell v. Forsyth*, 472 U.S. 511,

14   526 (1985).  The analysis involves two inquiries.  First, taken in the light most favorable to

15   plaintiff, the facts must show that the officer's conduct violated a constitutional right.  *Saucier v.*

16   *Katz*, 533 U.S. 194, 201 (2001).  If the answer is "no," then the court need not inquire further

17   before ruling that the officer is entitled to qualified immunity.  *Id.*  If, however, "a violation could

18   be made out on a favorable view of the parties' submissions," the court must examine "whether

19   the [constitutional] right was clearly established."  *Id.*  A court has the discretion to decide "which

20   of the two prongs of the qualified immunity analysis should be addressed first in light of the

21   circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

22               For the right to be clearly established, "[t]he contours of the right must be sufficiently clear

23   that a reasonable official would understand that what he is doing violates that right."  *Anderson v.*

24   *Creighton*, 483 U.S. 635, 640 (1987).  Therefore, "the relevant, dispositive inquiry in determining

25   whether a right is clearly established is whether it would be clear to a reasonable officer that his

26   conduct was unlawful in the situation he confronted."  *Brosseau v. Haugen*, 543 U.S. 194, 198-99

27   (2004) (internal quotation marks omitted) (citing *Saucier*, 533 U.S. at 202).  To determine whether

28   a right was "clearly established," the court must turn to Supreme Court and Ninth Circuit law

United States District Court
Northern District of California

1    existing at the time of the alleged act.  *Osolinski v. Kane,* 92 F.3d 934, 936 (9th Cir. 1996).

2         The due process clause of the Fourteenth Amendment protects a pretrial detainee from the

3    use of excessive force that amounts to excessive punishment.  *Kingsley v. Hendrickson*, 135 S. Ct.

4    2466, 2473 (2015) (citing *Graham v. Connor*, 490 U.S. 386, 395, n. 10 (1989)); *see also Martinez*

5    *v. Stanford*, 323 F.3d 1178, 1183 (9th Cir. 2003) ("[T]he law regarding a prison guard's use of

6    excessive force was clearly established by 1994[.]").  A pretrial detainee must show only "that the

7    force purposely or knowingly used against him was objectively unreasonable."  *Id.*  In the absence

8    of an expressed intent to punish, a pretrial detainee can prevail by showing that the officer's

9    actions are not "rationally related to a legitimate nonpunitive governmental purpose" or that the

10   actions "appear excessive in relation to that purpose."  *Id.* (citing to *Bell v. Wolfish*, 441 U.S. 520,

11   561 (1979)).

12        The alleged constitutional violation for which Defendants seek qualified immunity is

13   Solopow's use of force against Ruiz.  Defendants argue that Solopow's takedown of Ruiz did not

14   violate a clearly established constitutional right because it was not objectively unreasonable.

15   Motion at 12-13.  Ruiz responds that his allegations, taken as true, show that Solopow's use of

16   force was excessive in relation to any conceivable legitimate purpose and therefore objectively

17   unreasonable under the due process excessive punishment standard.  Opp. at 4-5.  Defendants

18   reply that Ruiz fails to sufficiently allege the violation of a clearly established constitutional right

19   or that Solopow's use of force was excessive.  Reply at 10-11.

20        Ruiz adequately alleges that Solopow's use of force violated a clearly established

21   constitutional right.  The alleged facts present no objective reason for the amount of force that

22   Solopow used against Ruiz because he posed little or no threat to Solopow.  In the operative

23   complaint, Ruiz alleges that immediately prior to the incident Solopow attempted to bend Ruiz's

24   head forward, which caused him pain.  FAC ¶ 12.  Ruiz told Solopow not to bend his head

25   forward.  *Id.* ¶ 13.  Solopow then "grew impatient" and "with extreme force" took Ruiz to the

26   ground while he was handcuffed behind his back.  *Id.* ¶ 14.  On the facts as alleged, Solopow's

27   conduct violated Ruiz's clearly established constitutional rights because Solopow's use of force

28   was excessive in relation to Ruiz's verbal resistance to having his head bent forward.  *See, e.g.,*

United States District Court
Northern District of California

13

United States District Court
Northern District of California

*Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007) (finding that qualified immunity did not apply to the officers' tackle of plaintiff who did not pose a serious threat to the officers' or others' safety); *Acasio v. San Mateo County*, Case No. 14-cv-04689-JSC, 2015 WL 5568345, at *7 (N.D. Cal. Sept. 22, 2015) (finding no reasonable officer could believe that it is objectively reasonable to "tackle a person who is simply slow to comply with instructions").

Defendants contend that Ruiz "physically resisted" Solopow by "suddenly jump[ing]" onto a nearby concrete bench to get "vertical leverage." Reply at 10; Motion at 4, 13. They claim Solopow used a "takedown and control hold" to reasonably restrain Ruiz. Motion at 13. Defendants' argument fails because it relies on allegations made in the original complaint, which is not the operative complaint for this motion. *See supra*, footnote 1. More importantly, Defendants' position disputes the factual accuracy of Ruiz's allegations, which cannot be determined on a motion to dismiss. *See Grant v. City of Long Beach*, 315 F.3d 1081, 1088–89 (9th Cir. 2002) (holding that on a motion to dismiss, the court must accept allegations in the complaint as true in determining whether qualified immunity applies).

Accordingly, the court denies Defendants' Rule 12(b)(6) motion to dismiss on the basis of qualified immunity.

### C.      Section 1983 Claim as to Ahern

Defendants move to dismiss the complaint for failure to state a claim as to Ahern. Although not entirely clear, Ruiz appears to be bringing a claim against Ahern in his individual capacity under a supervisory liability theory. *See* Opp. at 2. A defendant may be held liable as a supervisor under section 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). If a supervisory official is not directly involved in the allegedly unconstitutional conduct, then "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr*, 652 F.3d at 1208 (quoting

1   *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir.1998)).

2          Courts have found supervisory liability for excessive force claims where a plaintiff alleges

3   specific facts supporting a causal connection between the supervisor's actions or failures to act and

4   the resulting constitutional violation.  For example, in *Trujillo v. Jacquez*, the defendant prison

5   warden conducted an inquiry into the plaintiff's allegations of excessive force by various

6   correctional officers but chose not to refer the matter to the appropriate authorities.  Case No. 10-

7   cv-5183-YGR, 2013 WL 5227054, at *5 (N.D. Cal. Sept. 17, 2013).  The court denied the

8   defendant's motion to dismiss a supervisory liability claim because the defendant's conduct in

9   "reviewing the appeal and failing to remedy the constitutional violation" was sufficiently linked to

10  the excessive force used against the plaintiff.  *Id.*  In *Perez v. Cox*, the supervisory defendants

11  allegedly "trained, supervised, or controlled their subordinates" pursuant to a practice of using live

12  birdshot against prison inmates, leading to the death of a prisoner.  788 Fed. App'x 438.  The

13  district court found, and the Ninth Circuit affirmed, that the excessive force claim brought by the

14  deceased prisoner's estate adequately alleged supervisory liability because the supervisors

15  permitted the continued use of birdshot against prisoners despite knowing the "dangerous and

16  potentially lethal consequences."  *Id.* at 441.

17         In this case, the court agrees with Defendants that Ruiz's allegations fail to state a

18  cognizable excessive force claim under supervisory liability as to Ahern.  Ruiz does not allege that

19  Ahern was personally involved in the incident with Solopow.  Instead, he asserts that Ahern

20  "knew or reasonably should have known that the Plaintiff would be subjected to physical abuse"

21  because Ahern "failed to train, supervise and or control" Solopow.  FAC ¶¶ 24, 26.  Ruiz also

22  argues that "pursuant to Cal. Gov. Code § 26605, Sheriff Ahern was required to take charge of and

23  be the sole and exclusive authority of the Alameda County jail."  FAC ¶25.  Unlike in *Perez*,

24  where the plaintiff identified a specific practice that led directly to the alleged constitutional

25  violation, Ruiz does not identify any specific training or supervisory policy or explain what was

26  deficient about the policy.  Additionally, Ruiz does not identify any actions Ahern should have

27  taken or failed to take to abate the substantial risk of serious harm caused by the unspecified

28  deficient training policy.

United States District Court
Northern District of California

1    Although Ruiz claims to have submitted "numerous inmate grievances," unlike the

2    plaintiff in *Trujillo,* Ruiz does not claim that Ahern was knew or should have known about the

3    grievances, or that Ahern was responsible for reviewing Ruiz's submissions.  Therefore, Ruiz fails

4    to allege that Ahern's conduct played a causal role in the incident involving Solopow because

5    Ruiz has not "stated his claim with specificity, i.e., he has [not] linked Defendant['s]. . . conduct to

6    his claim of excessive force through the aforementioned actions of reviewing the appeal." *See*

7    *Trujillo*, 2013 WL 5227054, at *5.

8        Because Ruiz has not linked specific action or inaction by Ruiz to his claim of excessive

9    force, the court grants Defendants' 12(b)(6) motion to dismiss in regard to Ahern.

10       **D.    *Monell* Claim**

11       Ruiz does not explicitly cite the basis for his claim against the County.  At the hearing,

12   Ruiz conceded that he was not bringing a claim under *Monell* and did not offer another reason

13   why the County is liable for the harm he suffered.  His opposition brief also did not respond to any

14   of Defendants' arguments on this point.

15       The court grants Defendants' 12(b)(6) motion to dismiss Ruiz's claim against the County.

16       **E.    Punitive Damages**

17       Ruiz seeks punitive damages as to all Defendants.  Compl. at 6.  Defendants move to

18   dismiss punitive damages as to all Defendants on the basis that Ruiz's allegations do not support a

19   valid punitive damages claim.  Motion at 17.  Additionally, Defendants move to dismiss punitive

20   damages as against the County as a matter of law.  *Id.* at 16.

21       Ruiz's punitive damages claims against the County and Ahern are moot because Ruiz's

22   claim against those Defendants are dismissed.[9]  Punitive damages are available under section 1983

23   for claims against individuals.  *See Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 17 (1991); *Dang*

24   *v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005).  While state officials sued in their official capacity are

25   immune from punitive damages, *Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996), Solopow is

26   an employee of Alameda County and not a state official.  *Streit v. County of Los Angeles,* 236 F.3d

27

28   ─────────────
     [9] Additionally, municipalities are immune from punitive damages under section 1983. *City of*
     *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

United States District Court
Northern District of California

1    552, 561 (9th Cir.2001) (holding that a sheriff acts for the county and not the state when

2    overseeing and managing a local jail).  Additionally, Ruiz is suing Solopow in his individual

3    capacity.  Therefore, Ruiz's claim for punitive damages as to Solopow is not barred as a matter of

4    law.  *See Haslip*, 499 U.S. at 17.

5            To allege punitive damages, the plaintiff must plead facts showing that the defendant's

6    conduct was driven by "evil motive or intent" or involved a reckless or callous indifference to the

7    constitutional rights of others.  *Smith v. Wade*, 461 U.S. 30, 56 (1983); *see also Dang*, 422 F.3d at

8    807–09.  Ruiz alleges that Solopow, "became agitated that the Plaintiff was not fully complying

9    with his order to keep moving, and as a result of his agitation, deliberately and maliciously took

10   the Plaintiff (who was handcuffed) to the ground with extreme force."  Opp. at 10.  On these facts,

11   a jury could reasonably conclude that Solopow used force to physically exercise his frustration at

12   Ruiz and was therefore motivated by evil intent or a reckless or callous indifference to Ruiz's

13   constitutional rights.  *See Smith*, 461 U.S. at 56.  As previously stated, Defendants argument that

14   Ruiz was resisting Solopow relies on facts that are not alleged in the operative complaint and

15   cannot be determined on a motion to dismiss.  *See* n. 4.  The court finds that Ruiz has alleged

16   sufficient facts to support a reasonable jury's finding that Solopow's actions were "malicious,

17   wanton, or oppressive" for the purposes of punitive damages.  *See Dang,* 422 F.3d at 807 (citing

18   *Wade,* 461 U.S. at 49).

19           Defendants motion to dismiss Ruiz's claim for punitive damages as against the County and

20   Ahern is denied as moot.  The court denies Defendants' motion to dismiss punitive damages as to

21   Solopow.

22   **IV.    LEAVE TO AMEND**

23           Under Federal Rule of Civil Procedure 15(a), leave to amend should be granted as a matter

24   of course, at least until the defendant files a responsive pleading.  Fed. R. Civ. P. 15(a)(1).  After

25   that point, Rule 15(a) provides generally that leave to amend the pleadings before trial should be

26   given "freely . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "This policy is to be applied

27   with extreme liberality."  *Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1051 (9th Cir.

28   2003) (quotation omitted).  In the absence of an "apparent" reason, such as undue delay, bad faith

1  or dilatory motive, prejudice to the opposing party, futility of the amendments, or repeated failure

2  to cure deficiencies in the complaint by prior amendment, it is an abuse of discretion for a district

3  court to refuse to grant leave to amend a complaint.  *Foman v. Davis*, 371 U.S. 178, 182 (1962);

4  *Lockheed Martin Corp. v. Network Sols., Inc*., 194 F.3d 980, 986 (9th Cir. 1999).  These factors do

5  not "merit equal weight," and "it is the consideration of prejudice to the opposing party that carries

6  the greatest weight."  *Eminence Capital*, 316 F.3d at 1052.  "Granting leave to amend does not

7  necessarily mean that the underlying allegations ultimately have merit."  *FlatWorld Interactives*

8  *LLC v. Apple Inc*., 12-cv-01956-WHO, 2013 WL 6406437, at *3 (N.D. Cal. Dec. 6, 2013).

9  "Rather, '[a]bsent prejudice, or a strong showing of any of the remaining [ ] factors, there exists a

10  presumption under Rule 15(a) in favor of granting leave to amend.'"  *Id*. (quoting *Eminence*

11  *Capital*, 316 F.3d at 1052).

12       If the court dismisses the complaint, it "should grant leave to amend even if no request to

13  amend the pleading was made, unless it determines that the pleadings could not possibly be cured

14  by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  The court

15  cannot say as a matter of law that amendment would be futile as to Ruiz's claims against Ahern and

16  the County.  Accordingly, Ruiz shall file an amended complaint by no later than July 29, 2020 to

17  include the date of Ruiz's release from jail, as well as any amendments that attempt to revive claims

18  against Ahern or the County.

19  **V.    CONCLUSION**

20       For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in

21  part.  Ruiz must file an amended complaint by no later than July 29, 2020.

22

23       **IT IS SO ORDERED.**

24  Dated: July 15, 2020

25

26                                                                    Donna M. Ryu

27                                                        United States Magistrate Judge

28



United States District Court
Northern District of California

18